UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MATTHEW COOPER,

      Plaintiff,

v.                                    Case No:  2:18-cv-675-FtM-29MRM

PATRICK            MURPHY,
A.S.W./Warden,  S.  PESINA,
Sgt.,   and   S.   BOWDEN,
Grievance
Coordinator/Classification,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants Murphy and

Bowden's Motion to Dismiss Plaintiff's Second Amended Complaint

(Doc. #46) and Defendant Pesina's Motion to Dismiss Plaintiff's

Second  Amended  Complaint  (Doc.  #47).   Plaintiff  filed  a

consolidated response to the motions (Doc. #50).  As more fully

set forth below, the Court grants Defendants Murphy and Bowden's

Motion to Dismiss but denies Defendant Pesina's Motion to Dismiss.

### I. Background and Factual Allegations

Matthew Cooper, a Florida prisoner incarcerated at the Desoto

Correctional Annex, is proceeding on his Second Amended Complaint

filed under 42 U.S.C. § 1983 (Doc. #13, "SAC").  Plaintiff sues

Sergeant  Pesina,  Assistant  Warden  Patrick  Murphy,  Grievance

Coordinator Mrs. Bowden and an "Unknown White Female Officer" in

their individual and official capacities for violating Plaintiff's First, Fifth, Sixth, Eighth and Fourteenth Amendment rights. (Doc. #13, pp. 2-3).

These facts are in the SAC and accepted as true at this stage of the proceedings. On October 18, 2014, between 7:30 a.m. and 8:00 a.m., Sergeant Pesina, accompanied by an unidentified white female officer, entered G-dorm cursing loudly, slamming doors and acting in an overall belligerent manner. (Id., p. 6). When asked why he was behaving in this manner, Pesina yelled profanities. (Id.). Pesina ran up a flight of stairs and then turned around and ran back down the stairs "straight into Plaintiff['s] cell G-1120" where he "slammed the Plaintiff into the wall with such force nearly knocking him unconscious." (Id.). Pesina handcuffed Plaintiff, dumped all Plaintiff's legal materials and canteen items onto the floor and "kicked and stomp[ed]" and "poured c[au]stic chemicals" on the property "permanently destroying and damaging them." (Id., p. 7). Afterwards Pesina, while saying "that's for writing grievances nigger," shoved Plaintiff into the wall and knocked him back onto the floor while handcuffed. (Id.).

Pesina, followed by the white female officer, then ran back up the stairs, where Pesina attacked another black inmate and attempted to throw the inmate off the top of the stairs. (Id., at 7-8). Pesina took out his mace, pointed it at the black inmate

and uttered a racial profanity.  (Id.).  Pesina then pointed the mace toward the other inmates gathering and asked, "who else wants some of this?"  (Id., p. 8).

Several officers responded to the commotion and saw Plaintiff's cell in disarray.  (Id.).  Captain Williams came into the cellblock to speak with Plaintiff, the other inmates, Pesina and the white female officer.  (Id.)  Pesina and the white female officer admitted to Williams that Pesina had caused the damage in Plaintiff's cell and to his property.  (Id.).

Plaintiff sustained damages to the left side of his head, face and shoulder.  (Id., at 9).  Medical staff examined Plaintiff and documented his injuries.  (Id.).  Plaintiff had x-rays and was prescribed Excedrin, Naproxen, and Bengay, given a front handcuff pass, and placed in protective custody.  (Id.).  Plaintiff's claims were investigated by the inspector general's office.  (Id. p. 10).

Plaintiff states the legal documents destroyed by Defendant Pesina included "newly discovered evidence" and evidence of his "factual innocence."  (Id. p. 12).  Plaintiff claims that due to the documents' destruction he could not file a state post-conviction motion and caused his "2244 to be dismissed."  (Id.).  As relief, Plaintiff seeks both injunctive and monetary relief.  (Id., pp. 14-16).

## II. Motions to Dismiss and Standard of Review

Defendants request dismissal of the SAC because : (1) Plaintiff failed to exhaust his administrative remedies; (2) the SAC violates procedural rules and otherwise fails to state claim upon which relief can be granted; (3) Plaintiff's claims for monetary damages are barred by the Eleventh Amendment; and (4) defendants are entitled to qualified immunity. (See generally Docs. #46 and #47).

In deciding a motion to dismiss, the "'record' is limited to pleadings and the attachments to those pleadings" and the Court "must accept the allegations in the plaintiff's pleading as true." Geter v. Baldwin State Prison, 974 F.3d 1348, 1358 (11th Cir. 2020); Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). A complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds on which it rests to satisfy the pleading requirements of Fed. R. Civ. P. 8. Id. at 555. In addition, to overcome a Rule 12(b)(6) motion to dismiss the plaintiff's claim must be plausible. Id. at 556. The Court must be able to draw a reasonable inference from the complaint that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the facts need not be detailed, they must "raise a reasonable expectation that discovery will reveal evidence" for the plaintiff's claim. Twombly, 550

U.S. at 556.   Labels, conclusions, and a formulaic recitation of the elements of a cause of action are not enough to meet the plausibility standard.   Id. at 555.   Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if the alleged claim is not supported by enough factual allegations to raise a reasonable expectation of relief.   Id.

### III.  Analysis

**A.   Exhaustion**

The Prison Litigation Reform Act (PLRA) requires an inmate to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983.   See 42 U.S.C. § 1997e(a).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ."   Jones v. Bock, 549 U.S. 199, 216 (2007); see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) ("The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion, so 'the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim.'") (quoting Dimanche v. Brown, 783 F.3d 1204, 1211 (11th Cir. 2015)).   The Eleventh Circuit has held that a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement and is "a precondition to an adjudication of the merits."   Bryant v.

Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).   Procedurally, the defense is treated "like a defense for lack of jurisdiction[,]" although it is not a jurisdictional matter.   Id.   Thus, in matters of exhaustion, courts may consider evidence outside of the record at the motion to dismiss stage.   Id. at 1377 n.16; see also Geter v. Baldwin State Prison, 974 F.3d at 1354 n.11.   The district court may resolve factual questions about a plaintiff's alleged failure to exhaust if the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. Geter, Id. (citing Bryant).

When confronted with an exhaustion defense, courts employ a two-step process:

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (internal citations omitted).   Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."   Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

Defendants contend that the SAC must be dismissed because the face of the SAC admits plaintiff did not exhaust the administrative process.  Defendants point to the portion of the SAC which states plaintiff is suing Assistant Warden Murphy and S. Bowden under the Fifth and Fourteenth Amendments for not notifying Plaintiff of the outcome of the inspector general's investigation.  Doc. #13 at 14(citing to Doc. #13 p. 14 at ¶ 24).  In a somewhat disjointed statement, the SAC states that because Plaintiff was not notified of the outcome of the inspector general's investigation he was "denied . . . the right to finish exhausting the grievance process/administrative remedies unavailable, [sic] recovery of destroyed property & effective meaningful access to the court." (Doc. #13, p. 14 at ¶ 24).

But this statement must be taken in the context of the other allegations.  Later in the SAC, Plaintiff states he filed a grievance and was advised he had to wait until the inspector general completed his investigation.  (Doc. #13 p. 18).  Although not attached to the SAC, Plaintiff previously attached a copy of an informal grievance dated October 18, 2014, concerning the incidents involving Defendant Pesina.  (Doc. #1-1).  In a response dated November 6, 2014, Plaintiff was told:

> Your informal grievance was forwarded to the warden for response.  The subject of your grievance was previously referred to the office of the inspector general on 10/20/2014.  It is the responsibility of that office to

- 7 -

> determine the amount and type of inquiry that will be conducted. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling. As this process was initiated prior to receipt of your grievance, your request for action by this office is denied.

(Id.).

The Court is required to construe the allegations of a *pro* se plaintiff liberally. Plaintiff does not challenge this disposition of the grievance, i.e., that the Warden does not have the responsibility over a matter which has been previously referred to the office of the inspector general. The Court construes Plaintiff's statements in the SAC as complaining he never learned of the outcome of the inspector general's investigation. Defendants do not explain what further administrative processes were available to Plaintiff after his claims were investigated by the inspector general, or what Plaintiff failed to do after the investigation was complete. The Court finds Defendants have not satisfied their burden of showing that Plaintiff failed to exhaust his administrative remedies.

**B. Failure to Comply with Procedural Rules and State a Claim**

Defendants argue that the SAC fails to conform with Federal Rules of Civil Procedure 8 and 10 and is otherwise vague, conclusory and incoherent and may be dismissed. (Doc. #46, p. 5; Doc. #47, pp. 4-5). Essentially, Defendants argue the SAC is a shotgun pleading.

A shotgun pleading is one that "fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015). The U.S. Supreme Court explained that the purpose of the pleading rules is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).   The Court finds the factual allegations in the SAC are sufficiently stated and organized and provide the Defendants with fair notice of Plaintiff's claims.

Liberally construed, the SAC alleges an Eighth Amendment claim against Defendant Pesina stemming from the two excessive use of force incidents on October 18, 2014, a First and Fourteenth Amendment claim stemming from Defendant Pesina's destruction of Plaintiff's legal and personal materials, and a First Amendment retaliation claim.  As to Defendants Murphy and Bowden, the SAC alleges a Fourteenth Amendment claim stemming from Defendants Murphy and Bowden's alleged failure to apprise Plaintiff of the outcome of the inspector general's report, thus potentially interfering with Plaintiff's ability to exhaust his administrative remedies, recover destroyed property, and have meaningful access to the court.

The Court finds the SAC sufficiently pleads sufficient facts to withstand a motion to dismiss for an Eighth Amendment violation against Defendant Pesina for excessive use of force. Under the Eighth Amendment, force in a custodial setting is permitted if it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citations omitted); see also Hudson v. McMillian, 503 U.S. 1, 8 (1992).   The Court considers a variety of factors to determine whether force was applied maliciously and sadistically to cause harm, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."   Hudson, at 7-8. "[I]inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."   Whitley, 475 U.S. at 321 (citations omitted).   Further, while more than a de minimis injury is necessary, the injury "need not be significant."   Siglar v. Highower, 112 F. 3d 191, 193-95 (5th Cir. 1997).   Assuming the allegations in the SAC are true, the Court

- 10 -

finds the SAC plausibly alleges an Eighth Amendment claim against Defendant Pesina.

The Court will also permit Plaintiff's First Amendment retaliation claim to proceed against Pesina. "Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances." Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009). To prevail on a retaliation claim, a plaintiff must eventually establish that (1) his speech was constitutionally protected; (2) he suffered adverse action which would likely deter a person of ordinary firmness from engaging in such speech; and (3) a causal relationship between the retaliatory action and the protected speech. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). The Court finds the statements allegedly made by Pesina while committing the various acts are sufficient to establish a plausible claim.

Similarly, the SAC contains sufficient information to proceed on Plaintiff's First Amendment access to court claim. A plaintiff who alleges a First Amendment denial of access to court claim must allege the interference caused him actual injury regarding the litigation. See Lewis v. Casey, 518 U.S. 343, 349-351 (1996). A plaintiff must be able to demonstrate the "prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous,

- 11 -

post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (citation omitted). Here, the SAC asserts Pesina's actions prevented Plaintiff from filing the legal documents in a state post-conviction matter and/or caused his habeas action to be dismissed. Because the SAC alleges an actual injury, the First Amendment access to court claim may proceed past the motion to dismiss stage.

The Court finds, however, that Plaintiff's claims under the Fifth or Fourteenth Amendments that Pesina's destroyed his personal or legal property fail. The Fifth Amendment only applies to the federal government, not to the states. See Dusenbery v. United States, 534 U.S. 161, 167 (2002). Also, the Supreme Court has held that the Fourteenth Amendment Due Process Clause is not violated when an inmate loses personal belongings due to the negligent or intentional actions of correction officers if the state provides an adequate post-deprivation compensatory remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Florida Administrative Code provides an administrative remedy process for inmates to challenge deprivations of inmate property. A claim about any loss or destruction of his personal property may also be raised in a tort action under Florida state law. Without showing that the state's post-deprivation remedy is inadequate to litigate

- 12 -

his lost property claim, the SAC fails to state a plausible claim under the Fourteenth Amendment.

Finally, the Court finds the SAC fails to state a claim against Defendants Murphy and Bowden.  Because Plaintiff does not have a constitutionally protected liberty interest in a grievance procedure, Defendants Murphy and Bowden's alleged involvement or interference in the grievance process, even if true, does not rise to a constitutional claim.  See Thomas v. Warner, 237 F. App'x 435, 438 (11th Cir. 2007) (citations omitted); see also Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015)(holding the district court properly found the plaintiff failed to state a claim where he alleged the defendants did not "take corrective action" in response to his grievance appeal). Thus, the Court will dismiss the SAC as against Defendants Murphy and Bowden.

## C.   Eleventh Amendment Immunity

Defendant Pesina argues that Plaintiff's claim for monetary damages against him in his official capacity should also be dismissed, because he is entitled to Eleventh Amendment immunity. Doc. #47 at 14. The Court agrees that such claims are barred by the Eleventh Amendment. See, e.g., Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) ("The Eleventh Amendment also prohibits suits against state officials

- 13 -

where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state."). Defendant Pesina's Motion is granted to the extent that Plaintiff requests monetary damages from Defendant Pesina in his official capacity.

### D.   Qualified Immunity

Defendant Pesina argues that he is protected by qualified immunity because his actions were undertaken in furtherance of his discretionary duties and were in the scope of his authority.  (Doc. #47, p. 13).  "To be eligible for qualified immunity, a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred."  Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016). The burden then shifts to plaintiff to establish that qualified immunity does not apply by proving that the public official violated a constitutional right that was 'clearly established' at the time of the challenged conduct.  Id.; Echols v. Lawton, 913 F.3d 1313, 1323 (11th Cir.), cert. denied, 139 S. Ct. 2678 (2019). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085 (2011).

In the Eleventh Circuit, "a defense of qualified immunity is
not available in cases alleging excessive force in violation of
the Eighth Amendment, because the use of force 'maliciously and
sadistically to cause harm' is clearly established to be a
violation of the Constitution by the Supreme Court decisions in
Hudson and Whitley."  Skrtich v. Thornton, 280 F.3d 1295, 1301
(11th Cir. 2002) (citing Johnson v. Breeden, 280 F.3d 1308 (11th
Cir. 2002)).

The Eleventh Circuit, "and the Supreme Court have long held
that state officials may not retaliate against private citizens
because of the exercise of their First Amendment rights."  Bennett
v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005).  "Further, it
is well established that a prison inmate 'retains those First
Amendment rights that are not inconsistent with his status as a
prisoner or with the legitimate penological objectives of the
corrections system.'"  Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th
Cir. 2008) (quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S.
Ct. 2800, 2804 (1974)).  "When reviewing an official's retaliatory
conduct for adverse effect, we consider whether his alleged conduct
"would likely deter a person of ordinary firmness from the exercise
of First Amendment rights. . . ."  Echols, 913 F.3d at 1320 (citing
Bailey, 843 F.3d at 481).

- 15 -

Based upon the allegations in the SAC, the Court finds Defendant Pesina is not entitled to qualified immunity at this stage of the proceedings.

Accordingly, it is hereby

**ORDERED:**

1.   Defendants Murphy and Bowden's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #46) is **GRANTED** and Plaintiff's Second Amended Complaint is **DISMISSED without prejudice** against Defendants Murphy and Bowden.

2.   Defendant Pesina's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #47) is **GRANTED to the extent** Plaintiff's Fifth and Fourteenth Amendment Claims stemming from the alleged destruction of Plaintiff's personal and legal property and Plaintiff's claims for monetary damages against Defendant Pesina in his official capacity are **DISMISSED.**  The Motion (Doc. #47) is otherwise **DENIED.**

3.   Defendant Pesina shall file an answer to Plaintiff's Second Amended Complaint **within twenty-one (21) days.**

**DONE and ORDERED** at Fort Myers, Florida, this ___6th___ day of November, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:  Parties of Record

- 16 -